IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LINDA MARI, :
          Plaintiff, :
 :
v. : Civ. No. 15-5093
 :
NANCY A. BERRYHILL, :
*Acting Commissioner of Social Security*, :
          Defendant. :

# O R D E R

Plaintiff Linda Mari challenges the denial of her application for disability insurance benefits and supplemental security income. (Pl.'s Req. for Review, Doc. No. 10.) The Magistrate Judge has recommended granting Plaintiff's Request for Review and remanding for further administrative proceedings. (R. & R., Doc. No. 16.) Both Plaintiff and the Commissioner have filed objections. (Def.'s Obj., Doc No. 17; Pl.'s Resp., Doc. No. 19.) I will overrule Plaintiff's objections and sustain in part those of the Commissioner.

## I.    PROCEDURAL HISTORY

On March 2, 2011, Plaintiff, then 33 years old, filed her application, alleging the December 2006 onset of total disability, including upper back pain, left arm numbness, depression, anxiety, and learning difficulties. (R. 17, 295–299.) Throughout the inquiring disability proceedings, Plaintiff held part-time employment as a concert-hall "greeter." (R. 30, 64–65.) Plaintiff appealed the Social Security Administration's denial of her application. (R. 139–148.) The ALJ conducted a hearing and denied Plaintiff's claim for benefits. (R. 39–59, 115–128, 150, 161.) The Appeals Council granted Plaintiff's request for review and remanded in October 2014. (R. 134–137.) After a hearing on February 23, 2015, the ALJ again denied Plaintiff's claim, finding that Plaintiff was not disabled at the fifth step of the sequential

evaluation process because there are jobs in the national economy that she could perform. (R. at 14–38, 60–86.) The Appeals Council denied Plaintiff's request for review, and Plaintiff filed the instant action. (R. at 1–6.) On March 22, 2017, Magitsrate Judge issued her Report and Recommendation. (R&R, Doc. No. 16.)

## II. LEGAL STANDARDS

I must affirm the ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g); Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 565, 108 S. Ct. 2531, 101 L. Ed. 2d 490 (1988)). "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." Malloy v. Comm'r of Soc. Sec., 306 F. App'x 761, 764 (3d Cir. 2009).

I must review *de novo* those portions of the Report and Recommendation or specific proposed findings of fact to which objection is made. 28 U.S.C. § 636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). I may "accept, reject, or modify, in whole or in part, [the Magistrate Judge's] findings and recommendations." 28 U.S.C. § 636(b)(1). It is also within my discretion to rely on the findings and recommendations of the Magistrate Judge to which no objection has been made. See United States v. Raddatz, 447 U.S. 667, 676 (1980).

## III. DISCUSSION

### A. The Commissioner's Objections

The Commissioner objects to the Magistrate Judge's recommendation that I remand so

that the ALJ may correct both his assessment of Plaintiff's residual functional capacity and hypothetical to the Vocational Expert. (Def.'s Obj., Doc. No. 17.) First, the ALJ described Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 41.6.967(B) except she can lift up to twenty pounds. She can stand and/or walk for six hours total in an eight hour workday. She can sit for six hours total in an eight-hour workday. She can perform no tasks involving detailed instructions. She is unable to do the same repetitive motion continuously throughout the day, such as in an assembly line, but she is able to do a variety of functions bilaterally.

(R. 23.) Based on this RFC, the ALJ posed the following hypothetical to the Vocational Expert:

> I would like you to consider, hypothetically, an individual 41 years of age with training, education, and experience as in the present case, who is able to lift 20 pounds, stand and walk six hours in an eight hour day, sit for six or more hours in an eight hour day. Non-exertional limitations, no detailed instructions and is unable to do the same repetitive motion continuously throughout the day but is able to do – or, such as an assembly line, but is able to do a variety of functions bilaterally. Given those facts and circumstances, is there any work the hypothetical individual could perform on a sustained basis, including past work of the claimant.

(R. 81–82.)

Although the Magistrate Judge found that this RFC and hypothetical did not adequately address Plaintiff's exertional and non-exertional limitations, the Commissioner argues that there is substantial evidence in the record to support the ALJ's formation of this RFC and hypothetical and raises three specific objections. (Def.'s Obj., Doc. No. 17.)

### *Exclusion of Plaintiff's Social Functioning Limitations*

The Commissioner objects to the Magistrate Judge's conclusion that the ALJ erred in failing to include on the RFC and hypothetical question Plaintiff's mild limitations in social functioning. (Def.'s Obj. 3; R&R 20–21.) I agree.

An ALJ's hypothetical question "must reflect *all* of a claimant's impairments that are

supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir. 2004). The ALJ may nonetheless omit an impairment that is "minimal or negligible." Id. at 555; see also Stewart v. Astrue, 2012 U.S. Dist. LEXIS 75681, at *67–69 (E.D. Pa. May 31, 2012) (Strawbridge, U.S.M.J.), adopted by 2012 U.S. Dist. LEXIS 161757 (E.D. Pa. Nov. 13, 2012) (claimant's mild limitations in social functioning and other categories were so minimal or negligible that the ALJ did not err by not including these limitations in the RFC and hypothetical to the VE).

Here, the ALJ could have included Plaintiff's mood disorder in his list of Plaintiff's impairments, provided he found that the disorder "may impose more than minimal limitations on the claimant's ability to perform basic work activities." (R&R 20; R. 20.) He found, however—with ample record support—that this mental impairment's impact on Plaintiff's social functioning was mild. (R&R 20; R. 21.) Dr. Smith observed that Plaintiff had a slight restriction in interacting appropriately with supervisors, and no restrictions in interacting appropriately with the public and co-workers. (Tr. 774.) Similarly, Dr. Tarter characterized Plaintiff's social functioning limitations as mild. (R. 23, 94, 96–97.) Finally, Plaintiff's testimony respecting her employment as a part-time information clerk and greeter for seven years—and her ongoing employment as a greeter throughout her disability proceedings—further support the ALJ's finding that Plaintiff's social impairment was mild. (R. 30, 64–65); see also, Rutherford v. Barnhart, 399 F.3d 546, 554–556 (3d Cir. 2005) (ALJ does not have to include in its hypothetical limitations that have been "reasonably discounted" by other evidence on the record such as claimant's testimony); Christian v. Colvin, No. 15-3762, 2017 U.S. Dist. LEXIS 10137, at *52 (E.D. Pa. Jan. 25, 2017) ("[R]emand may be unnecessary where, despite an ALJ's imposition of

4

limitations in the third step of the sequential analysis . . . not subsequently include[d] in an RFC assessment or hypothetical, the ALJ nonetheless offers sufficient and substantiated reasons for why the limitations should not be included.").

The only mental limitation that the ALJ included in the RFC and hypothetical was a "no detailed instructions" provision. (R. 23, 81–82.) The Magistrate Judge deemed this inadequate: "[a]ny attempt to shoehorn a 'no detailed instructions' limitation into a social function impairment is unavailing." (R&R 21); Debias v. Astrue, No. 11-3545, 2012 WL 2120451, *5 (E.D. Pa., June 12, 2012). I do not agree. The decision on which the Magistrate Judge relied involved a claimant with moderate limitations in social functioning, suffering panic attacks every day. Id. at *4. Plaintiff's limitations in social functioning, however, were "minimal or negligible." See also Ramirez, 372 F.3d at 552.

In these circumstances, I agree with the Commissioner that the ALJ permissibly excluded Plaintiff's mild social functioning limitations from the RFC and hypothetical. I will sustain the Commissioner's objection on this issue.

### *Exclusion of Plaintiff's Moderate Limitations in Concentration, Persistence, or Pace*

The Commissioner also objects to the Magistrate Judge's conclusion that the ALJ did not adequately incorporate Plaintiff's moderate limitations in concentration, persistence, or pace into the RFC and hypothetical. (Def.'s Obj 6; R&R 20–21.) I disagree and will overrule the Commissioner's objection.

Dr. Smith recognized that Plaintiff had the following limitations: (1) a slight limitation in understanding and remembering simple instructions; (2) a moderate limitation in carrying out short, simple instructions; (3) a moderate limitation in understanding and remembering detailed instructions; (4) a moderate limitation in carrying out detailed instructions; (5) a moderate

limitation in making judgments on simple work-related decisions; and (6) moderate limitations in responding appropriately to work pressure and changes in a routine work setting. (R. 774.)

The ALJ professed to give "great weight" to Dr. Smith's report, acknowledging that Plaintiff had moderate difficulties in concentration, persistence, or pace. (R. 22, 28–29.) In determining Plaintiff's RFC and formulation of the hypothetical, however, the ALJ nonetheless characterized Plaintiff's mental limitations as follows: "she can perform no tasks involving detailed instructions." (R. 23, 81–82.) I agree with the Magistrate Judge that this does not adequately capture Plaintiff's mental limitations, which include a moderate difficulty in processing short, simple instructions. (R. 774); see Ramirez v. Barnhart, 372 F.3d 546, 554 (a hypothetical that limited a claimant to simple one to two step tasks was insufficient to capture the fact that claimant *often* suffered from deficiencies in concentration, persistence or pace); see also Colon v. Barnhart, 424 F. Supp. 2d 805, 811 (E.D. Pa. 2006) ("[a] finding of 'often' under the old [limitations] scale therefore roughly equates to a 'moderate' deficiency."). Nor does the ALJ's characterization include Plaintiff's moderate limitations in responding appropriately to changes in a routine work setting. (R. 22, 774); see Barry v. Barnhart, Civ. A. No. 05-1825, 2006 U.S. Dist. LEXIS 71918, at *at 30–31 (E.D. Pa. September 28, 2006) (a "perform simple, low stress 1-2 step tasks, involving limited contact with the public and co-workers" instruction in the hypothetical did not account for claimant's psychological impairments which triggered moderate limitations in pace and adaptability).

Although I agree that "[n]o rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight," an "ALJ must provide a 'discussion of the evidence' and an 'explanation of reasoning' for his [or her] conclusion sufficient to enable meaningful judicial

review." (Def.'s Obj. 7); Wilkinson v. Comm'r of Soc. Sec., 558 Fed. Appx. 254, 256 (3d Cir. 2014); but see Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009). The ALJ offers no such explanation for his omission of these limitations. Nor did the ALJ refer to "other relevant evidence" that might support his omission. Compare Wilkinson, 558 Fed. Appx. at 256 (ALJ gave significant weight to a source, but "in conjunction" with other contradictory medical reports, which permissibly explained why the ALJ did not adopt all limitations proffered by the source) with (R. 28–29, 94, 96–97, 770–771, 774). Here, the ALJ did not include the mental limitations discussed in two medical opinions to which he gave weight, despite their consistency in labeling Plaintiff's affective, anxiety, and learning disorders as severe, and limitations in concentration, persistence or pace as moderate.

In sum, I do not agree with the Commissioner's contention that the ALJ had reason to exclude from the RFC and hypothetical limitations in concentration, persistence, or pace from medical sources he credited. (Def.'s Obj. 6–8.) Because the resulting determination and hypothetical question are deficient, the Vocational Expert's testimony jobs in the national economy that Plaintiff can perform also may be suspect. (R. 30–31); see also Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). Accordingly, I will overrule the Commissioner's objection on this issue.

### *Exclusion of Physical Limitation*

Finally, the Commissioner objects to the Magistrate Judge's ruling that the ALJ erred by failing to include in the RFC and hypothetical Plaintiff's inability to climb or reach overhead. (Def.'s Obj. 8; R&R 20–21.) I agree and will sustain the Commissioner's objection.

Relying on the opinion of consultative physical examiner Dr. Perlson that he "would not recommend climbing [on a frequent basis], as the patient may have to reach overhead frequently

7

for this," the Magistrate Judge ruled that the ALJ should have included this limitation in the RFC and hypothetical. (R. 829); see also Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir. 2004).

Although the ALJ had included "a no climbing or overhead reaching" limitation in the first RFC and hypothetical, upon remand the ALJ was not required again to include it explicitly in his second RFC and hypothetical. (R. 55–56, 122); see also Zavilla v. Astrue, No. 09-133, 2009 U.S. Dist. LEXIS 96369, *38–43 (W.D. Pa. Oct. 16, 2009) (findings from an earlier residual functional capacity determination are not binding in a later proceeding). Rather than describe Plaintiff's inability to climb or reach overhead frequently, the ALJ stated that the Plaintiff could not perform "repetitive motions continually throughout the day." (R&R 20; R. 23, 81–82.) The Commissioner argues that the restriction on repetitive motions is actually broader than a "no climbing or overhead reaching limitation." (Def.'s Obj. 9.) I agree. In responding to the hypothetical, the Vocational Expert testified, *inter alia*, as follows: while Plaintiff could not perform her old screen printer position because it "would require frequent reaching and handling . . . not on an assembly line, but it would be frequent," she could perform the work of a marker, cashier II, and folder. (R. 82.) The ALJ's decision reflects this same construction of the hypothetical: the ALJ explained that in light of Plaintiff's complaints about arm pain, that his RFC "further limits the claimant to no repetitive movement with her upper extremities," thus expanding the restriction to all repetitive movements. (R. 27–28.) Because, as explicitly construed by the expert and the ALJ, the RFC and hypothetical already encompass Plaintiff's physical limitation on frequent overhead reaching—by restricting all repetitive movements—there was no omission of Plaintiff's physical limitation.

Furthermore, Plaintiff's counsel *did* explicitly ask the vocational expert if there were jobs Plaintiff could do if her dominant upper extremity limitations were considered. (R. 83.) The

8

expert's response was the same as her response to the ALJ's hypothetical: that there were jobs in the national economy despite these limitations—testimony comprising substantial evidence on which the ALJ could rely. See Trout v. Astrue, No. Civ. A. 10-6530, 2011 WL 3652500 at *15–16 (E.D. Pa. July 28, 2011) (claimant counsel's question to the vocational expert about an exertional limitation not included in the hypothetical, and the expert's accompanying answer was substantial evidence that supported the ALJ's finding on exertional limitations).

In these circumstances, it is apparent that there was no error warranting a remand. Accordingly, I will sustain the Commissioner's objection.

### B. Plaintiff's Objections

Plaintiff raises several objections to the Magistrate Judge's determination that the ALJ properly considered and weighed the opinions of treating physicians, state agency physicians, and examiners. (Pl.'s Obj., Doc. No. 19.) I disagree and will overrule Plaintiff's objections.

The ALJ must evaluate all medical opinions, giving them weight according to their support and consistency with the record as a whole. Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 148 (3d Cir. 2007). The ALJ may then credit some opinions and discredit others, providing he or she provides a rationale for doing so. Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 506 (3d Cir. 2009). Opinions of a treating physician's reports are entitled to controlling weight only when they are well-supported and not inconsistent with other substantial evidence in the record. See Fargnoli v. Halter, 247 F.3d 34, 43 (3d Cir. 2001).

Here, there was substantial evidence to support the ALJ's treatment of the medical evidence. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). Accordingly, I agree with the Magistrate Judge and adopt

her recommendations on this issue.  See Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986) (Court must uphold ALJ decision if supported by substantial evidence).

*Mental Limitations*

Plaintiff argues that the ALJ gave insufficient weight to the opinions of treating psychologist Dr. Elizabeth Blair and treating psychiatrist Dr. Ulhas Mayekar.  (Pl.'s Obj. R. 28–29.)  I do not agree.

Plaintiff first argues that the ALJ should have given different weight to Dr. Mayekar's opinion—conveyed in a handwritten, check-the-box form—that Plaintiff had "extreme limitations in social functioning and concentration, persistence, or pace" and would miss more than three days of work per month due to her mental limitations.  (R. 28, 965–968; Pl.'s Obj. 8); compare Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best") with Santiago v. Apfel, No. 98-cv-1529, 1999 U.S. Dist. LEXIS 4518, *8-9 (E.D. Pa. March 23, 1999) (such forms should not be disregarded if supported by treating physicians clinical notes and written reports).  The ALJ permissibly reasoned, however, that the opinion Dr. Mayekar stated in that form was not supported by his own clinical notes and thus was appropriately discredited.  (R. 897. 898, 900, 902, 904, 1037, 1038, 1040, 1042, 1044); see Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 506 (3d Cir. 2009).

Because Dr. Blair's progress notes are similarly inconsistent with the opinion expressed in her August 2012 Medical Source Statement, the ALJ permissibly discounted the opinion (giving it only "some weight").  (R&R 15; R. 887, 889–92, 964, 1047, 1051, 1058, 1060.)  In the August 2012 statement, Dr. Blair stated Plaintiff is "seriously limited" or "unable to meet competitive standards" in various activities relevant to social functioning and concentration,

persistence or pace. (R. 906–907.) There are many instances, however, in her progress notes where she details Plaintiff's ability to maintain active friendships, attend her part-time job, complete errands, travel to appointments, and engage in substantial activities. (R. 887, 889–92, 964, 1047, 1051, 1058, 1060.)

Plaintiff also objects to the Magistrate Judge's determination that the ALJ permissibly gave less weight to Dr. Blair's August 2012 Medical Source Statement and Dr. Mayekar's opinions than to those of state agency examiner Dr. Smith and non-examining state agency reviewer Dr. Tarter. (Pl. Obj. 11; R& R 15–16.) Once again, I agree with the Magistrate Judge.

An ALJ may choose to credit the opinion of a non-treating, non-examining physician over that of a treating physician when the opinions conflict, and the rejection of the treating physician's opinion is belied by contradictory medical evidence. Becker v. Comm'r of the SSA, 403 Fed. Appx. 679, 686 (3d. Cir. 2010) (quoting Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). The ALJ may also "afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir 1999). I have already explained that the ALJ permissibly gave less weight to Blair. The ALJ found Dr. Smith's and Dr. Tarter's evaluations of Plaintiff's mental limitations more consistent with the record, including Plaintiff's testimony and Dr. Mayekar's and Dr. Blair's own progress notes. (R. 22–23, 28–30 , 64–67, 77.) This adequately explains the ALJ's medical opinion evaluations. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 93 (3d Cir. 2007) (the ALJ properly relied on a state agency psychologist's contrary analysis about claimant's mental limitations when other evidence in the record supported it).

Finally, Plaintiff argues that the ALJ erred by not explicitly considering a GAF score of forty-five. (Pl.'s Obj. 15.) I agree with the Magistrate Judge's analysis: because the ALJ

discussed the drop in GAF scores from fifty to forty throughout his decision, he was not obligated to mention explicitly the single GAF score of forty-five. (R&R 14 n.8; R. 22, 28–30); see also Hughes v. Comm'r Soc. Sec. 643 F. App'x 116, 119 (ALJ's discussion on an increase in GAF score constituted sufficient consideration of GAF scores); cf. Serrano v. Colvin, No. 13-7221, 2015 WL 8482850, at *5 (E.D. Pa. Dec. 9, 2015) (remand was appropriate when ALJ ignored not just one but twenty-one GAF scores).

In sum, I will overrule Plaintiff's objections regarding the Magistrate Judge's ruling that the ALJ properly weighed the medical evidence when determining Plaintiff's mental limitations.

*Physical Limitations*

Plaintiff also argues that the ALJ gave insufficient weight to the opinions by primary care physicians Drs. Andrew Bongiovanni and Dr. Duffy. Once again, I agree with the Magistrate Judge. (R. 27.)

The ALJ permissibly rejected the opinion Dr. Bongiovanni expressed in an application to reduce the transit fare Plaintiff would have to pay reasoning that the opinion was: 1) inconsistent with other information in Plaintiff's medical record; and 2) was mostly probative of Plaintiff's needs in boarding and leaving a transit vehicle, not performing work tasks. (R. 27); see Breen v. Comm'r of Soc. Sec., 504 F. App'x 96, 99 n.3 (3d Cir. 2012) ("[O]pinions on issues reserved to the Commissioner—i.e., a claimant's residual functional capacity—are not entitled to 'any special significance' regardless of the source of the opinion.).

I also disagree with Plaintiff's challenge to the ALJ's rejection of Dr. Duffy's 2013 recommendation limiting Plaintiff to sedentary work. (Pl.'s Obj. 18.; R. 1001.) As the Magistrate Judge properly concluded, the ALJ adequately explained that Dr. Duffy's 2013 recommendation differed significantly from the entirety of the doctor's evaluation—which

generally shows "that Plaintiff's range of motion was normal in both upper extremities" or only mildly restricted. (R. 27; R. 980, 983, 987, 991, 995, 1000, 1015 (records normal range of motion or only mild restriction); R. 981, 984, 988, 992, 1001, 1007, 1012, 1017 (advises Plaintiff to "perform activities using full range of motion as tolerated").) Dr. Duffy even contradicts within the same report his recommendation that Plaintiff be limited to sedentary work—explaining that Plaintiff "reported feeling about the same," and "there has been some improvement with therapy." (R. 1017, 1022.) The ALJ also referred to other entries in the 2011–2014 medical record that contradict Dr. Duffy's 2013 recommendation. (R. 26–27, 808, 1033, 1017, 1067–1077, 1085, 1088.) In these circumstances, the ALJ properly discounted the 2013 recommendation.

Finally, Plaintiff argues that the Magistrate Judge erred in ruling that the ALJ could rely on state medical examiner Dr. Perlson's September 2011 opinion that Plaintiff could perform light work with limitations. (Pl.'s Obj. 16; R&R 17–18; R. 824–830.) As I have discussed, the ALJ acted permissibly in relying on the non-treating physician's opinion. Becker, 403 Fed. Appx. at 686; Plummer, 186 F.3d at 429.

In sum, I will overrule Plaintiff's objections regarding the Magistrate Judge's rulings regarding the ALJ's treatment of medical evidence.

## IV. CONCLUSION

**AND NOW**, this 8th day of December, 2017, after careful and independent review of the initial Complaint (Doc. No. 3), the Commissioner's Answer (Doc. No. 9), the administrative record (Doc. No. 8), and all related submissions, and upon consideration of Plaintiff's Motion for Summary Judgment and Request for Review (Doc. No. 10), the Commissioner's Response (Doc. No. 12), Plaintiff's Reply (Doc. No. 15), Magistrate Judge Lynne A. Sitarski's Report and

Recommendation (Doc. No. 16), the Commissioner's Objections (Doc. No. 17), and Plaintiff's Response (Doc. No. 19), and all related submissions, it is hereby **ORDERED** as follows:

1. The Commissioner's Objections (Doc. No. 17) are **SUSTAINED in part**;
2. Plaintiff's Objections (Doc. No. 19) are **OVERRULED**;
3. The Report and Recommendation (Doc. No. 16) is **APPROVED AND ADOPTED in part**;
4. Plaintiff's Request for Review (Doc. No. 10) is **DENIED in part and GRANTED in part**;
5. The final decision of the Commissioner of Social Security is **REVERSED** and the matter is **REMANDED** in accordance with the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this Order. On remand, the ALJ shall**:**
    a. reconsider Plaintiff's RFC in light of Plaintiff's moderate limitations in concentration, persistence or pace;
    b. pose hypothetical questions to the vocational expert which take into account all Plaintiff's credible limitations, including her moderate limitations in concentration, persistence or pace; and
    c. consider whether the Mercy Fitzgerald physical therapy records should be part of the administrative record and whether inclusion of these records changes the weight given to Dr. Duffy's sedentary work recommendation.
6. I have not addressed Plaintiff's argument that the ALJ erred at step five of the sequential evaluation because a new RFC and hypothetical may result in a different finding as to job availability (Pl's Req. for Review, 20–22, Doc. No. 10; R&R 22 n. 14.);
7. The **CLERK OF COURT** shall **ENTER JUDGMENT** by separate document in favor

14

of Plaintiff and against the Commissioner.  See Shalala v. Schaefer, 509 U.S. 292, 303 (1993); Kadelski v. Sullivan, 30 F.3d 399, 402 (3d Cir. 1994); Fed. R. Civ. P. 58(a); and

8. The **CLERK OF COURT** shall **CLOSE** this case.

                                                        **AND IT IS SO ORDERED.**

                                                        */s/ Paul S. Diamond*

                                                        _____

December 8, 2017                                                        Paul S. Diamond, J.